**Cordell SCHOONOVER, Respondent,**

v.

**Lester KAHN, Gladys Kahn and Ben Lightor, Appellants.**

**No. 23896.**

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

Jerome B. Stone, Harold Waxman, Kansas City, Goodman, Stone & Taxman, Kansas City, of counsel, for appellants.

Ralph E. Pratt, Silks & Silks, Kansas City, for respondent.

MAUGHMER, Commissioner.

Suit for damages growing out of an alleged breach of a real estate lease. Cordell Schoonover, plaintiff-respondent, during the years 1955–59, was engaged in "The meat processing business and appliance business". He operated under the trade name "Nu-Way Sales". On December 12, 1955, he and the defendants Lester Kahn and Ben Lightor, entered into a written Store Lease under which he leased for two years defendants' property located at 3543 Prospect, at a rental of $140 per month.

On November 1, 1956, these parties executed a new lease for the same property. This lease was for three years, commencing November 1, 1956 and ending October 31, 1959. It carried the same rental figure of $140 per month, together with an option

under which the lessee "shall have the option to purchase the premises leased herein for the sum of $15,000 at any time during the term of this lease by giving written notice of same to lessor 30 days in advance of the exercise of this option".

Plaintiff said that after the first lease had been in effect for nearly one year he decided to begin processing meat and food in the building; that this required a remodeling of the structure which would be expensive and if he made these changes he wanted "protection on the building". Therefore he sought and secured the second lease with the option to purchase. It was Mr. Schoonover's testimony that he purchased the overhead heater and the air conditioners from lessors; that the old building on the rear of the premises needed extensive repairs to make it usable and he employed his "father, Bill Burris, Gene Powell and other laborers" to improve this building. He said the repairs and remodeling included the roof, walls and foundations, that the floors were insulated and electrical fixtures were installed. He declared that the making of these improvements took about six months' time and cost approximately $15,000. He produced some canceled checks payable to Bill Burris and Gene Powell. He said Powell was paid $60 per week and Burris, who did most of the wiring, and was the contractor, was paid $150 per week.

Schoonover said that in 1958 there was a definite increase in the number of his refrigeration and appliance repossessions brought about by reason of customer defaults in payments. Plaintiff had negotiated this paper to finance companies with recourse on him. The finance companies retained a substantial sum of the purchase price paid for plaintiff's customer notes as a "reserve" and according to the evidence this "reserve" could not be used to cover repossessions unless and until plaintiff went out of business. Plaintiff testified that in order to make this reserve, which he estimated at $30,000, available, he closed out the

business as it had been operated and formed a new corporation to carry on the venture. He moved some equipment from the premises, part to his residence, and part to a new location.

In December, 1958, plaintiff went to California for about two weeks. He said this trip was partly a vacation and partly to assist his father in a business deal. He left the keys to the leased premises with his employee Gene Powell. Gene Powell at the time was separated from his wife and lived in the premises both day and night. Mr. Powell testified that just before Christmas the defendant Ben Lightor came to the leased premises and asked where Schoonover was. Powell replied that he was on vacation but would be back. He said Lightor told him he had sold the place and needed the keys. Powell gave Lightor the keys and moved out.

Mr. Schoonover returned from California and early in January, 1959, went to the premises where he found workmen painting and making repairs on the building. Plaintiff had paid all rentals due under the lease through December, 1958. He said that some of his personal property—office supplies, air conditioners and bins for storing meat—of the total value of $500, had been removed and were never recovered by him. He claimed that he then rented a new location or store room at 31st and Jackson, at a monthly rental of $150, and that the cost of moving, installing his equipment and required remodeling was "approximately $5,000."

The defendants Lightor, Kahn and Mrs. Gladys Kahn, in December, 1958, conveyed the leased property by warranty deed to Morris M. and Minnie Dloogoff. The Dloogoffs were named as defendants in Count 2 of plaintiff's petition but had the verdict and no appeal therefrom was taken.

It was the trial contention of defendants that Schoonover had vacated the premises, had removed some of the fixtures and had never sought to exercise his option by

giving the 30 days' notice to either Lightor, Kahn or to the Dloogoffs.

The jury verdict and the judgment were for plaintiff and against the defendants Lightor, Kahn and Mrs. Gladys Kahn in the sum of $10,000. These defendants perfected a timely appeal in which they present five assignments of error, namely, (1) the petition fails to state a cause of action; (2) defendants' motion for directed verdict should have been sustained; (3) it was error to give Instruction No. 1; (4) it was error to give Instruction No. 2 and (5) there is no evidence to support the verdict.

 Plaintiff's second amended petition alleges existence of the lease with option to purchase, compliance by the plaintiff with the rental provisions of the lease, improvements made by plaintiff, sale by defendants during the lease period, the wrongful dispossession of plaintiff and removal of plaintiff's personal property, all to plaintiff's damage in the sum of $30,000. The petition, we think, states a cause of action. The evidence which we have summarized is substantial and credible.

 Appellants assert that Schoonover never tried to exercise the option by giving the prescribed 30 days' notice and say he could have enforced the option against the purchasers, the Dloogoffs. Defendants by their sale of the property had made it impossible for them to perform under the option. They had breached the covenant conferring an option to purchase. As stated in 51 C.J.S. Landlord and Tenant § 88, p. 648: "In case of a breach of a covenant conferring on the lessee an option to purchase, the lessee is entitled to recover damages sustained by him". See Barling v. Horn et al., Mo., 296 S.W.2d 94, where, under a different situation, specific performance was decreed. It is possible that plaintiff might produce evidence under which he might secure specific performance from the Dloogoffs but we shall not pursue or speculate upon this possibility. Defendants by their act in conveying the property made it

impossible for them to honor the option. Plaintiff is not required to seek recompense for defendants' breach of the option covenant from the Dloogoffs. He may seek damages from the defendants directly. Points 1, 2 and 5 are overruled.

We set out Instructions 1 and 2:

### Instruction No. 1

"The Court instructs the jury that if you find and believe from the evidence that on or about the 12th day of December, 1955, Lester Kahn, Gladys Kahn and Ben Lichtar were the owners of the property commonly known as 3409–3411 Prospect, if so, and if you find that on that date Cordell Schoonover and the defendants, Lester Kahn and Ben Lightar entered into a lease agreement whereby plaintiff was to lease from the aforesaid defendants the property known as 3409–3411 Prospect, Kansas City, Missouri, and if you further find and believe from the evidence that on the 1st day of November, 1956, the aforesaid parties entered into a second store lease agreement for a term of three years, said agreement containing an option to purchase by plaintiff, if you so find; and if you further find and believe from the evidence that on or about December 12, 1958, that Lester Kahn, Gladys Kahn and Ben Lightar conveyed by warranty deed, title to the aforesaid property to the defendants, Morris Dloogoff and Minnie Dloogoff, and all of said defendants took possession of premises all without the knowledge of the plaintiff, Cordell Schoonover, if so, and that said deed did not recite that it was subject to plaintiff's leasehold interest and option to purchase rights, if you so find; and if you further find and believe from the evidence that plaintiff made all of his rent payments under the lease agreements up to and including the time when he lost possession, if you so find, and if you find that the defendants took possession of the

aforesaid premises in December of 1958, in violation of the leasehold interests of the plaintiff, if you so find, and if you further find that prior to defendants taking possession of the premises there had been no breach of any of the lease covenants on the part of the plaintiff, if you so find, then your verdict shall be for the plaintiff and against the defendants".

### Instruction No. 2

"You are instructed that if the jury, under instruction number 1, finds the plaintiff is entitled to recover, you will assess his damages at the actual damage which you believe, from all the evidence, he received, and in arriving at that amount you may take into consideration:

"First: For the reasonable value of the improvements, if any, made by plaintiff on the property at 3409–3411 Prospect, Kansas City, Missouri;

"Second: For the reasonable value of the loss of the use of the premises under the lease, if any, including the loss of business, if any, sustained by reason of the loss of use of the premises, if any, at 3409–3411 Prospect, Kansas City, Missouri;

"Third: For the reasonable value of the loss of his option to purchase said property, if any;

"Fourth: For the reasonable expense of acquiring and preparing a new location in which to conduct his business, if any.

"Fifth: For the reasonable value of any personal property which was withheld from plaintiff, if any".

■ Instruction No. 1 hypothesizes factually the execution and the contents—including the option—of the two leases, and as prerequisite to a plaintiff verdict, requires a finding of the sale by defendants, a dispossession of plaintiff, all while plaintiff was in compliance with the lease. We believe the instruction was proper, hypothesized sufficient facts and did not give the jury a "roving commission". Appellants complain that the instruction did not tell the jury what facts it must find to amount to a "violation of leasehold interests of plaintiff". We think the instruction required a finding of the existence of the lease and the option, (neither of which was disputed), a sale before termination of the lease and a taking of possession while plaintiff's rent payments were current. We overrule defendants' objection to the giving of Instruction No. 1.

■ Instruction No. 2 lists five items which the jury might consider in arriving at the amount of damages. Appellants say this instruction is erroneous because "there was no evidence for the jury to determine the reasonable value of" (a) improvements made by plaintiff; (b) loss of use of leased premises and loss of business sustained by plaintiff; (c) the loss of the option to purchase; (d) the expense of acquiring and moving to a new location and (e) personal property of plaintiff which had been withheld. There was testimony by the plaintiff himself on all of these points. On the question as to the damages, if any, under the lost option there is the testimony that in 1956, the building was appraised at $15,000, testimony as to the improvements made by plaintiff and the fact that the Dloogoffs paid $27,079.49 for this property and apparently an adjoining rental property. The record is vague as to the other property and there is no testimony as to its proportionate value in the total purchase price.

We have examined the authorities referred to in appellants' brief and find no pronouncements requiring reversal of this judgment. For example, in Lee v. Armour Bldg. Co., Mo.App., 18 S.W.2d 102, cited by appellants, plaintiff was dispossessed with 8½ months remaining under his lease which carried an option to renew for one additional year. The court specifically approved Instruction No. 2 given in that case

which authorized the jury to "take into consideration the loss of profit, if any, sustained by plaintiff which he would with reasonable certainty have realized during the term of said lease remaining * * * with the privilege of the plaintiff extending said lease one year thereafter * * *".

As one of the owners of the leased property, Mrs. Kahn acquiesced in the lease signed by her husband, she joined in the conveyance to the Dloogoffs and cannot escape liability because she did not actually sign the lease.

The verdict for $10,000 is certainly well within the limit of damages as shown by plaintiff's evidence. Appellants make no additional assignments of error. Therefore, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.