**URBAN HOTEL MANAGEMENT CORPORATION, Plaintiff-Appellant,**

**v.**

**The MAIN AND WASHINGTON JOINT VENTURE, et al.,
Defendants-Appellees.**

**No. 3-685A157.**

Court of Appeals of Indiana,
Third District.

June 25, 1986.

Rehearing Denied Sept. 5, 1986.

James A. Masters, Nemeth & Masters, South Bend, for plaintiff-appellant.

Timothy W. Woods, South Bend, for defendants-appellees.

HOFFMAN, Judge.

This is an appeal from the granting of defendants' (appellees') motion for summary judgment and the denial of plaintiff's (appellant's) motion for partial summary judgment.

Despite the complicated series of events that resulted in the present appeal, the parties agree on the material facts. However, a complete rendition of the facts is necessary, since the applicable law is highly fact sensitive.

The appellees are the Main and Washington Joint Venture and its individual members (Main and Washington). For a number of years prior to 1982, when the events in this case began, Main and Washington owned a hotel in downtown South Bend. After July 1, 1982 the hotel was managed by the Pick South Bend Corporation (Pick South Bend), a subsidiary of Americana Hotels, Inc. The management agreement that controlled and defined Pick South Bend's and Main and Washington's respective rights and duties provided, in pertinent part:

> "8.03 *Americana's Right of First Refusal—Sale and Lease.* If during the term of this agreement ... Owner ... receive[s] a bona fide offer from any party on bona fide terms ... to lease the Hotel ... then Owner shall give ... to Americana 7 days notice in writing of such offer ... and Americana shall have the first option ... to lease the Hotel ... on the same terms and conditions of such offer by giving written notice to Owner of its intention so to ... lease ... within said 7-day period, on the same terms and conditions of such offer."

For purposes of the agreement, "Owner" meant Main and Washington and "Ameri-

cana" was defined to include Pick South Bend.

In the Fall of 1982 the appellant, Urban Hotel Management Corp. (Urban Hotel), began negotiations with Main and Washington for the sale or lease of the hotel. At the very first meeting Urban Hotel was informed of the outstanding right of first refusal.[1] On February 9, 1983 Urban Hotel and Main and Washington agreed on a tentative lease. An amendment to the lease, signed by both parties, acknowledged the right of first refusal as follows:

"AMENDMENT TO HOTEL

LEASE AGREEMENT

Tenant acknowledges that Landlord must allow Americana Hotels, Inc. a seven (7) day period in which to exercise its first right of refusal to accept or reject any offer Landlord receives concerning the Demised Premises and operation thereof. Landlord shall submit this offer on or before February 11, 1983.

Landlord therefore shall have the right to void this Lease Agreement if Americana Hotels, Inc. elects to accept this Lease Agreement as it exactly exists and as executed by Landlord and Tenant. Landlord shall give Tenant written notice on or before February 19, 1983. Failure to give notice is a waiver of the right of Landlord to void the Lease Agreement."

After Main and Washington and Urban Hotel reached their agreement, Main and

Washington, on February 10, 1983, sent the required notice of the bona fide offer to Pick South Bend. On February 16, 1983 Pick South Bend sent notice to Main and Washington that, "[W]e are exercising our option with regard to the 'Hotel' on the same terms and conditions of such offer[.]" Accordingly, on February 19, 1983, Main and Washington notified Urban Hotel of Pick South Bend's action and declared the lease agreement void.

The record reveals that subsequent to Pick South Bend's notice of intent to lease no lease was ever entered into with Main and Washington. This occurred because of a disagreement over interpretation of terms in the existing agreement. However, in 1984, Main and Washington sold its ownership interest in the building to Pick South Bend.

Urban Hotel filed suit against Main and Washington on April 8, 1983, seeking either specific performance of the executory lease or damages for breach of lease. After discovery, both parties filed summary judgment motions and Urban Hotel appeals from the granting of Main and Washington's motion and the denial of its own motion for partial summary judgment.

The dispositive issue in this appeal is, whether the right of first refusal was properly exercised.[2] Urban Hotel argues that it was not, in essence because: 1) no lease was ever entered into on the same terms and conditions as its executory lease; 2) the Amendment to Hotel Lease Agreement

---

**1.** There is difference of opinion over the proper term for this type of business arrangement. Labels such as, "options to purchase" *Capitol Land Co., Inc. v. Zorn et al.* (1962), 134 Ind.App. 431, 184 N.E.2d 152, "first option to buy" *Di Maria v. Michaels* (1982), 90 A.D.2d 676, 455 N.Y.S.2d 875, and "pre-emptive rights," *Stoneburner v. Fletcher* (1980), Ind.App., 408 N.E.2d 545, while not wholly inaccurate are confusing because these terms also describe other, distinctly different situations. *See e.g., Scott v. Anderson Newspapers, Inc.* (1985), Ind.App., 477 N.E.2d 553; *Theobald v. Chumley* (1980), Ind.App., 408 N.E.2d 603; *Cressy v. Shannon Continental Corp. et al.* (1978), 177 Ind.App. 224, 378 N.E.2d 941.

Instead many courts now use the term, "right of first refusal." *See e.g., Smith v. Hevro Realty*

*Corp.* (1986) 199 Conn. 330, 507 A.2d 980; *Keys Lobster Inc. v. Ocean Divers Inc.* (1985) Fla.App., 468 So.2d 360; *Northwest Television Club, Inc. v. Gross Seattle, Inc.* (1981) 96 Wash.2d 973, 634 P.2d 837. *Accord Rosenberg et al. v. Village Shopping Center, Inc., et al.* (1968), 251 Ind. 1, 238 N.E.2d 642. Therefore, for the sake of clarity, this Court will also use the term "right of first refusal."

**2.** Urban Hotel lists four issues in its brief. Three of these are each arguments as to why the right of first refusal was not properly exercised. These are restated in the body and treated separately. The fourth is a generalized assignment of error, and given the disposition of the case, is subsumed by the primary issue.

required Americana Hotels, Inc., to exercise the right of first refusal and in fact Pick South Bend exercised the right; and 3) Main and Washington prevented Pick South Bend from exercising the right of first refusal.

On appeal from the grant of summary judgment based solely on a question of law, this Court stands in the shoes of the trial court, and will look to see if the law was accurately applied. *Rowland v. Amoco Oil Co.* (1982), Ind.App., 432 N.E.2d 414.

The nature of the rights involved must first be determined. By its terms, the management agreement granted Pick South Bend a right of first refusal. When granted, this right of first refusal was merely a dormant set of rights that did not entitle it to take any action until Main and Washington received a bona fide offer. *Stoneburner v. Fletcher* (1980), Ind.App., 408 N.E.2d 545 (using the term, "pre-emptive rights).

Once Main and Washington received the offer from Urban Hotel and Pick South Bend was notified, then the right of first refusal was transmuted into an option. *Stoneburner, supra.* An option, which is distinctly different from a right of first refusal, is a continuing offer whose duration and method of exercise is strictly controlled by the agreement that created it. *Rowland v. Amoco Oil Co., supra.*

Urban Hotel appears to contend that its lease amendment either created or modified Pick South Bend's right of first refusal. Pick South Bend was not a party to the lease and it never consented to any modification of its rights. Thus the only document that legally defined Pick South Bend's right of first refusal was the management agreement. *See e.g. Hess v. Lackey* (1921), 191 Ind. 107, 132 N.E. 257.

Having determined that Pick South Bend possessed a right of first refusal that became an option upon receipt of proper notice, the focus now shifts to whether the option was properly exercised. Generally, in the absence of extenuating circumstances, an option must be exercised by strict adherence to the agreement. *Rowland, supra.*

The management agreement that defined the right of first refusal, also specified how it was to be exercised. In pertinent part the agreement provided:

"Americana shall have the first option ... to lease the Hotel ... *by giving written notice to Owner of its intention so to ... lease ...* on the same terms and conditions of such offer."

Thus the only action that Pick South Bend was required to take in order to exercise its right of first refusal was to give written notice to Main and Washington of its *intention* to lease. In the absence of contrary agreement, this is the way that options are exercised. *Coons v. Baird* (1970), 148 Ind.App. 250, 265 N.E.2d 727, *trans. denied; Bond v. Peabody Coal Co.* (1983), Ind.App., 450 N.E.2d 542.

Pick South Bend exactly complied with this requirement and therefore the right of first refusal was properly exercised. Within the 7-day time limit, Pick South Bend sent notice to Main and Washington that it was exercising its option to lease the property on the same terms and conditions as Urban Hotel's offer. This is all that was required.

The fact Pick South Bend and Main and Washington never actually entered into a lease is immaterial in determining Urban Hotel's rights. Once Pick South Bend properly exercised the right of first refusal, Urban Hotel's rights to the property were completely cut off. *Capitol Land Co., Inc. v. Zorn et al.* (1962), 134 Ind.App. 431, 184 N.E.2d 152, *trans. denied.*

Urban Hotel's next contention is that the right of first refusal was not properly exercised because Pick South Bend exercised the right instead of Americana Hotels, Inc., as required by the Amendment to Hotel Lease.

Initially we reiterate that exercise of the right of first refusal was controlled by the management agreement, not the lease. The agreement stated that "Ameri-

cana" (defined to include Pick South Bend) was the proper party to exercise the right. Pick South Bend's rights and duties could not be altered by the totally extraneous lease. *Hess, supra.* Pick South Bend properly exercised the right of first refusal and therefore Urban Hotel has no legally cognizable complaint.

However, Urban Hotel contends that the mistaken name was a mistake of law and therefore it was error for the trial court to have granted summary judgment on Main and Washington's counterclaim for reformation of the lease amendment. Urban Hotel further contends that as a mistake which Main and Washington made it should be strictly construed against it.

It is true that a mistake of law, a mistake as to the legal import of language used, will not normally support a claim for reformation of an instrument. *See, Heavenridge v. Mondy* (1875), 49 Ind. 434. However the mistake involved here was a mutual mistake of fact and was properly subject to reformation. *Makeever v. Barker* (1926), 85 Ind.App. 418, 154 N.E. 692.

The uncontroverted evidence revealed in the record shows that during the negotiations the terms "Americana," "Americana Hotels" and "Pick South Bend" were used interchangeably to refer to the entity that was managing the hotel. More significantly, the Amendment to Hotel Lease Agreement was intended to incorporate the right of first refusal contained in the management agreement. The mistake, therefore was the product of casual usage of the only technically different terms. Both Urban Hotel and Pick South Bend were aware of the true intent and no one was deceived.

Finally Urban Hotel contends that the right of first refusal was not properly exercised because Main and Washington prevented Pick South Bend from entering into a lease. Urban Hotel contends that principles of equitable estoppel prevent Main and Washington from claiming that the right of first refusal was properly exercised.

However Urban Hotel has failed to establish even the basic elements of equitable estoppel and a search of the record reveals that such facts do not exist. Main and Washington did not make any false representations nor did it conceal any material facts. Urban Hotel was fully aware of all the pertinent facts and thus could not have reasonably relied on any misrepresentations, had they existed. *See e.g., Sheraton Corp. et al. v. Kingsford Packing* (1974), 162 Ind.App. 470, 319 N.E.2d 852.

There being no error, the trial court is affirmed.

Affirmed.

STATON, P.J., and SHIELDS, J., participating by designation, concur.