**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANTS:

**TOM A. BLACK**
Plymouth, Indiana

ATTORNEY FOR APPELLEES:

**JERE L. HUMPHREY**
Wyland Humphrey Wagner &
Clevenger, LLP
Plymouth, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

EARL R. ENGLAND and MARY L. ENGLAND, )
          )
    Appellants,          )
          )
        vs.          )    No. 50A04-1106-PL-297
          )
ROB E. HURFORD and JENNIFER M.      )
HURFORD,          )
          )
    Appellees.          )

APPEAL FROM THE MARSHALL CIRCUIT COURT
The Honorable Robert O. Bowen, Special Judge
Cause No. 50C01-1105-PL-13

**March 20, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

## STATEMENT OF THE CASE

Earl R. England ("England") and Mary L. England (collectively "the Englands") appeal the trial court's order granting a preliminary injunction to Rob E. Hurford ("Hurford") and Jennifer M. Hurford (collectively the "Hurfords").

We affirm.

## ISSUE

Whether the trial court abused its discretion by granting a preliminary injunction to the Hurfords.

## FACTS

In 2009, the Hurfords owned certain real property located at 15998 18th Road in Culver Indiana ("the Property"). Adjacent to the Property, the Hurfords also owned additional real property that contained farm land and livestock ("Farm Property"). To gain access to his livestock on the Farm Property, Hurford used a gravel driveway that went from the main road, traversed the Property, and led back to the Hurfords' Farm Property.

On August 9, 2009, England executed a Purchase Agreement and offered to buy the Property from the Hurfords. The Hurfords executed a counter offer, which was contained in Addendum #1 to Purchase Agreement ("the Addendum") and provided that the Hurfords would retain the right to a fifty-foot easement ("the Easement") on the Property. Specifically, the Addendum provided, "Buyer acknowledges: . . . Seller[s'] right to 50[]foot easement on Eastern edge of property as listed in MLS." (Appellants'

App. 18). The Easement included the gravel driveway that Hurford used to access his Farm Property.

On September 17, 2009, the Hurfords executed a Warranty Deed ("the Deed"), conveying the Property to England. The Deed, which was prepared by an attorney from the title insurance company, did not contain any reference to the Easement. The Deed was thereafter recorded with the county recorder's office. England's title insurance policy, which he obtained on September 24, 2009, contained an acknowledgement of the Easement in paragraph five of Schedule B of the policy ("Paragraph 5"). Specifically England's title insurance policy provided:

> 5. NOTE: Purchase Agreement by and between Rob E. Hurford and Jennifer M. Hurford (sellers) and Earl R. England (buyer) provides: "Buyer acknowledges: . . . 50 foot easement on Eastern edge of property as listed in MLS."

(Appellees' App. 3).

Hurford used the Easement daily to gain access to the Hurfords' Farm Property and to feed his livestock. There were times that Hurford and England discussed how the Easement was to be used. For example, in April 2010, the Englands contacted Hurford after some tractors were left on the gravel driveway on the Easement, and Hurford and England discussed how the Easement was to be used.

In June 2010, England had an endorsement issued that deleted Paragraph 5 from the title insurance policy. Thereafter, Hurford continued to use the Easement to gain access to his Farm Property and livestock. On April 29, 2011, the Hurfords received a letter from the Englands' attorney concerning the Easement. In the letter, the Englands'

3

attorney acknowledged that "there was some discussion concerning an easement" but pointed out that the Deed did not contain any language referring to the Easement on the Property. (Appellants' App. 38). The letter informed the Hurfords that they should cease using any portion of the Property. Approximately two weeks later, around May 13, 2011, the Englands erected a gate across the Easement. Thereafter, Hurford had to drive through one of his alfalfa fields to gain access to his Farm Property and to feed his livestock.

In May 2011, the Hurfords filed a complaint, and later an amended complaint, for reformation of the Deed as well as for a preliminary and permanent injunction. Specifically, the Hurfords sought to enjoin the Englands from interfering with their access to the Easement. On June 7, 2011, the trial court held a hearing on the Hurfords' request for a preliminary injunction. Thereafter, the trial court issued an order granting the Hurfords' motion for a preliminary injunction and then entered a preliminary injunction enjoining the Englands from interfering with the Hurfords' use of the Easement. The Englands now appeal.

<u>DECISION</u>

The grant or denial of a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003). To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action;

4

(2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved. *Id.* If the movant fails to prove any of these requirements, the trial court's grant of an injunction is an abuse of discretion. *Id.*

The Englands argue that one of the requirements for a preliminary injunction was not met. Specifically, the Englands contend that the Hurfords failed to prove a reasonable likelihood of success at trial and did not establish a prima facie case for reformation of a deed.

The Hurfords' complaint sought reformation of the Deed to include the Easement. The trial court found that the Hurfords had shown a likelihood of success at trial because the Purchase Agreement indicated that the parties had agreed to a fifty-foot easement but that "[t]hrough a mistake of the deed preparer, the easement was not included on the deed." (Appellants' App. 39, 40).

Accordingly, we will review whether the trial court abused its discretion by finding that the Hurfords met their burden of establishing a prima facie case for reformation of the Deed. While the Hurfords were required to establish a prima facie case, they were not required to show that they were entitled to relief as a matter of law nor were they required to prove and plead a case that would entitle them to relief upon the merits. *See Ind. High Sch. Athletic Ass'n v. Martin*, 731 N.E.2d 1, 7 (Ind. Ct. App. 2000), *trans. denied*. To prove a reasonable likelihood of succeeding on the merits, the Hurfords needed to establish a prima facie case through "substantial, probative evidence"

5

that they were entitled to reformation of the Deed. *See id.* Substantial evidence is evidence that is "more than a scintilla and less than a preponderance." *Id.* (citation omitted).

"Reformation is 'an extreme equitable remedy to relieve the parties of mutual mistake or fraud.'" *Meyer v. Marine Builders*, *Inc.*, 797 N.E.2d 760, 772 (Ind. Ct. App. 2003) (quoting *Estate of Reasor v. Putnam County*, 635 N.E.2d 153, 158 (Ind. 1994), *reh'g denied*). "The remedy of reformation is extreme because written instruments are presumed to reflect the intentions of the parties to the instruments." *Meyer*, 797 N.E.2d at 772. Therefore, courts in Indiana may reform written contracts only if: (1) there has been a mutual mistake; or (2) one party makes a mistake accompanied by fraud or inequitable conduct by the other party. *Id.*

The Hurfords did not allege that a fraud occurred; therefore, we focus our analysis on mutual mistake. Reformations for mutual mistakes are only available if they are mistakes of fact and not mistakes of law. *Id.* "A mutual mistake arises if there has been a meeting of the minds, an agreement actually entered into, but the document in its written form does not express what the parties actually intended." *Meyer*, 797 N.E.2d at 772 (internal quotation marks and citation omitted). Additionally, a "[m]istake by the scrivener will permit reformation of an instrument where it is logically indicated that both parties were mistaken as to the actual contents of the instrument." *Essex Group, Inc. v. Nill*, 543 N.E.2d 393, 396 (Ind. Ct. App. 1989), *reh'g denied*.

In a reformation action, it is the intent of the parties that controls. *Meyer*, 797 N.E.2d at 772. To determine the true intent of the parties, this court may look to the

6

parties' conduct during the course of the contract. *Id.* Furthermore, "[w]ritings executed at the same time and relating to the same transaction or subject matter will ordinarily be construed together in determining the intention of the parties." *Peterson v. First State Bank*, 737 N.E.2d 1226, 1229 (Ind. Ct. App. 2000), *reh'g denied*.

Here, the evidence is undisputed that the Addendum to the purchase agreement for the sale of the Property contained a provision that the Hurfords had a right to the Easement—specifically, a fifty-foot easement on the eastern edge of the Property—and that both parties signed the Addendum. While the title company attorney who prepared the Deed failed to include the Easement in the Deed, the conduct of the parties suggests that they intended that the Hurfords have a right to the Easement. England's title insurance policy on the Property, which he obtained within days of the issuance of the Deed, contained an acknowledgement of the Easement in favor of the Hurfords. Additionally, for almost two years after conveying the Property, the Hurfords used the Easement daily to gain access to their Farm Property and to feed their livestock. Indeed, Hurford and England acknowledged the Easement when they had discussions about exactly how the Easement was to be used by Hurford. After England discovered that the Deed did not contain any language establishing the Easement, he sent a letter to the Hurfords informing them of the same and then erected a fence to block access to the Easement.

Based on the evidence presented, the trial court concluded that the parties intended to establish the Easement on the Property but that the Easement was not included in the Deed due to a mistake by the deed preparer. Because the conduct of the parties and the

7

writings executed at the same time and relating to the Deed imply that the parties intended to establish the Easement on the Property in favor of the Hurfords, we conclude that the trial court did not abuse its discretion by concluding that the Hurfords had established a prima facie case for reformation of a deed and had at least a reasonable likelihood of success at trial.[1] *See, e.g.*, *Peterson*, 737 N.E.2d at 1230 (affirming the trial court's reformation of a promissory note to reflect the intent of the parties); *Essex Group*, 543 N.E.2d at 396-97 (affirming the trial court's reformation of a trust agreement to include a lump sum provision where the evidence showed that the parties intended the provision to be part of the trust agreement). Accordingly, we affirm the trial court's order granting the Hurfords' motion for a preliminary injunction.

Affirmed.

BAKER, J., and BAILEY, J., concur.

---

[1] The Englands contend that reformation of a deed is not applicable because there is no evidence of a mistake in the Deed and that, under the doctrine of merger, the Addendum containing the agreement to establish the Easement would have been extinguished and would have merged into the Deed. The doctrine of merger provides that

> in the absence of fraud or mistake, all prior or contemporaneous negotiations or executory agreements, written or oral, leading up to the execution of a deed are merged therein by the grantee's acceptance of the conveyance in the performance thereof. Under this doctrine, any existing contracts between the parties, if not carried forward into the deed, are extinguished thereby, and no action lies on the contract.

*Hastetter v. Fetter Properties, LLC*, 873 N.E.2d 679, 683 (Ind. Ct. App. 2007) (emphasis added) (citation omitted). Because the doctrine of merger would not be applicable in the absence of mistake and because we have concluded that the Hurfords have made a prima facie case for reformation of a deed based on a mistake, we leave to the parties to resolve at trial whether the evidence of mistake was sufficient to support the claim of reformation of a deed or to preclude application of the doctrine of merger.